UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| D.E. SHAW LAMINAR PORTFOLIOS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARCHON CORP., <br><br> Defendant. | ) <br> ) <br> ) <br> ) 2:07-CV-01146-PMP-LRL <br> ) <br> ) <br> ) <br> ) O R D E R <br> ) <br> ) <br> ) <br> ) |

Presently before the Court is Plaintiffs' Motion for Summary Judgment, Entry of Final Judgment, and to Strike Defendant's Mitigation Defense (Doc. #126), filed on March 12, 2010. Defendant filed an Opposition (Doc. #127) on April 5, 2010. Plaintiffs filed a Reply (Doc. #137) on June 8, 2010. Also before the Court is Defendant's Motion for Leave to File Supplement to Opposition to Plaintiffs' Second Motion for Summary Judgment and Entry of Final Judgment (Doc. #139), filed on August 6, 2010. Plaintiffs filed a Response (Doc. #141) on August 12, 2010. Defendant filed a Reply (Doc. #142) on August 18, 2010. This Court held a hearing on this matter on August 3, 2010. (Tr. of Mot. Hr'g (Doc. #72).)

**I. BACKGROUND**

In 1993, Defendant Archon Corp. ("Archon"),[1] a Nevada corporation, issued a class of equity securities designated as Exchangeable Redeemable Preferred Stock ("Exchangeable Preferred Stock" or "EPS"). (Am. Compl. (Doc. #27) ¶¶ 18-19; Ans. (Doc.

---

[1] Archon previously was named Sahara Gaming Corporation.

#44) ¶¶ 18-19.) Plaintiffs are primarily a variety of hedge funds and money managers who hold EPS. (Am. Compl. ¶¶ 7-16.) From the period of July 1, 2004 to December 31, 2004, Plaintiffs purchased 391,058 EPS shares. (Pls.' Second Mot. for Summ. J. (Doc. #126), Exs. 4, 7.) From the period of January 1, 2005 to June 30, 2005, Plaintiffs purchased 297,487 EPS shares. (Id., Exs. 7, 13.) From the period of July 1, 2005 to December 31, 2005, Plaintiffs purchased 199,641 EPS shares. (Id., Exs. 7-9, 13.) From the period of January 1, 2006 to June 30, 2006, Plaintiffs purchased 794,103 EPS shares. (Id., Exs. 4, 7-9, 13.) From the period of July 1, 2006 to December 31, 2006, Plaintiffs purchased 151,126 EPS shares. (Id., Exs. 5, 7-13.) From the period of January 1, 2007 to June 30, 2007, Plaintiffs purchased 53,700 EPS shares. (Id., Exs. 5-12.) From the period of July 1, 2007 to December 31, 2007, Plaintiffs purchased 212,201 EPS shares. (Id., Exs. 5-7, 10-12.)

The Certificate of Designation of the Exchangeable Redeemable Preferred Stock of Sahara Gaming Corporation ("Certificate") is the contract between Archon and the EPS holders, and details the rights of EPS holders. (Pls.' Second Mot. for Summ. J., Ex. 1.) The Certificate provides, in relevant part:

> 1. Designation and Rank . . . Shares of the Exchangeable Preferred Stock shall have a liquidation preference of $2.14 per share plus accrued and unpaid dividends, thereon, subject to Section 7(a).
> . . .
> 2. Cumulative Dividends Priority.
>    (a) Payment of Dividends. The holders of record of shares of Exchangeable Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefore, cumulative case dividends at a rate per annum per share (the "Dividend Rate") initially set at 8% of (i) $2.14 plus (ii) accrued but unpaid dividends as to which a Dividend Payment Date (as defined below) has occurred. Dividends shall accrue from the date of issuance and be payable semi-annually in arrears on the 31st day of March and the 30th day of September in each year . . . commencing on March 31, 1994 (each of such dates a "Dividend Payment Date"); provided, however, that on any or all of the first six Dividend Payment Dates the Company may, at its option, pay dividends on the Exchangeable Preferred Stock, in the form of additional shares of Exchangeable

Preferred Stock at the rate per annum of 0.08 shares of additional Exchangeable Preferred Stock for every share of Exchangeable Preferred Stock entitled to received [sic] a dividend.  If all Exchangeable Preferred Stock has not been redeemed prior to the tenth Dividend Payment Date, the Dividend Rate will increase on the tenth Dividend Payment Date to the rate per annum per share of 11% and will thereafter increase by an additional 0.50% per annum per share on each Dividend Payment Date until either the Dividend Rate reaches a rate per annum per share of 16% or the Exchangeable Preferred Stock is redeemed or exchanged by the Company as set forth herein.  In no circumstances will the Dividend Rate exceed 16% per annum per share. . . .  Dividends on the Exchangeable Preferred Stock shall be fully cumulative and shall accrue (whether or not declared), on a daily basis, from the first day of each Dividend Period; provided, however, that the initial semi-annual dividend payable on March 31, 1994 and the amount of any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period.
. . .

3. <u>Optional Redemption</u>.
    (a) <u>General</u>
        (i) . . . [T]he shares of Exchangeable Preferred Stock may be redeemed, in whole or in part, at the election of the Company, upon notice as provided in Section 3(b), by resolution of the Board of Directors, . . . at a redemption price equal to the Liquidation Preference.
. . .

7. <u>Liquidation Rights; Priority</u>
. . . [The Liquidation Preference is an amount] per share equal to the sum of (i) $2.14, plus (ii) an amount equal to all accrued but unpaid dividends for the then current Dividend Period, through the date of liquidation, dissolution, or winding up, plus all prior Dividend Periods, whether or not declared . . . .

(Id.)

Archon elected to make payment in kind dividend payments in lieu of cash on the first six dividend payment dates. (Compl. ¶ 24; Am. Ans. ¶ 24.)  After the first six payments, Archon accrued cumulative dividends rather than pay cash. (Compl. ¶ 25; Am. Ans. ¶ 25.)  Archon has not, prior to this lawsuit, paid a cash dividend on the EPS. (Compl. ¶ 25; Am. Ans. ¶ 25.)  The Certificate provides that dividends accrue to the extent not declared. (Pls.' Second Mot. for Summ. J., Ex. 1.)  The EPS dividends were fully cumulative, meaning there is no time limit as to how long they can accrue. (Id.)  Dividends

3

were to accrue on the EPS at an increasing dividend rate if not paid. (Id.)

Shares of the EPS could be redeemed at any time, at Archon's election, upon notice and by resolution of Archon's Board of Directors and upon payment of a redemption price equal to the Liquidation Preference for such shares. (Mot. for Summ. J., Ex. 1.) On July 31, 2007, Archon issued a Notice of Redemption of Preferred Stock ("Notice"), indicating it would redeem each outstanding share of EPS for $5.241 per share, which Archon claimed included all accrued but unpaid dividends. (Mot. for Summ. J., Ex. 2.) Archon redeemed the EPS on August 31, 2007 for $5.241 per share. (Am. Ans. ¶ 25.) Plaintiffs brought suit in this Court on August 27, 2007 for breach of contract, anticipatory breach, and declaratory relief, alleging Archon did not properly calculate the EPS dividends and liquidation preference according to the Certificate's terms.

On August 6, 2008, this Court granted partial summary judgment to Plaintiffs, holding that the Certificate was unambiguous and Plaintiffs' interpretation of the Certificate which results in compound dividends is correct. (Order (Doc. #80).) This Court also struck four of Defendant's five affirmative defenses, leaving only the defense of failure to mitigate which was not challenged by Plaintiffs' Motion. (Id.) On August 22, 2008, Defendant moved for certification of the August 6, 2008 Order for interlocutory appeal. (Doc. #82.) On July 16, 2009, Plaintiffs moved for summary judgment on Defendant's remaining defense and for Entry of Final Judgment. (Doc. #109.) On October 20, 2009, this Court granted Defendant's Motion for Certification and simultaneously denied Plaintiffs' Motion for Final Judgment without prejudice. (Doc. #123.) On January 20, 2010, the Ninth Circuit denied Defendant's Petition for Interlocutory Appeal. (Def.'s Opp'n Mot. for Summ. J. (Doc. #127), Ex. 4.)

Plaintiffs now move for final summary judgment, entry of final judgment, and prejudgment interest. Plaintiffs also move to strike Defendant's affirmative defense of failure to mitigate. Defendant contends that this Court's prior order interpreting the

Certificate was in error, and in any event, the Certificate does not support Plaintiffs' calculation of damages.

## II. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party "seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings . . .' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

## III. DISCUSSION

### A. Mitigation of Damages

In Nevada, "a party cannot recover damages for loss that he could have avoided by reasonable efforts." Conner v. S. Nev. Paving, Inc., 741 P.2d 800, 801 (Nev. 1987). However, "[i]f a course of action chosen by a plaintiff in responding to the damage caused

him by the defendant was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damages." A.I. Credit Corp. v. Gohres, 299 F. Supp. 2d 1156, 1162 (D. Nev. 2004).

Here, Defendant sets forth the affirmative defense of mitigation, claiming that Plaintiffs were damaged by their own conduct of acquiring shares after they learned that Archon was not compounding dividends. This Court previously held that the Certificate governing the rights of EPS holders was unambiguous and that Plaintiffs' interpretation of the formula for calculating dividends was correct. Therefore, it was reasonable for Plaintiffs to rely on the Certificate when purchasing EPS shares. Additionally, it is unreasonable to expect Plaintiffs to refrain from relying on an interpretation of the Certificate which this Court has deemed unambiguous and correct merely because it had notice that Defendant was interpreting the Certificate incorrectly. Defendant does not raise a genuine issue of material fact regarding mitigation. Defendant's mitigation defense is an attempt to re-litigate this Court's prior ruling on the calculation of dividend amounts. The Court will decline to revisit this issue. Therefore, the mitigation defense is unavailable to Defendant.

### B. Entry of Final Judgment

In its prior order, this Court held that the Certificate that governs the preferred stock is unambiguous. This Court also found that Plaintiffs' interpretation of the formula for calculating dividends is correct. The dividend amount is calculated by taking the dividend rate (initially set at 8%) and applying it to the sum of (i) $2.14 plus (ii) accrued but unpaid dividends as to which a Dividend Payment Date has occurred. There is no genuine issue of material fact regarding damages, all that is left is for the Court to determine damages by: calculating the dividend amounts as set forth above; using this to calculate the Liquidation Preference ((i) $2.14, plus (ii) an amount equal to all accrued and unpaid dividends); calculating the difference between the Liquidation Preference and the amount tendered by Archon; and multiplying this difference by the number of shares owned by

Plaintiffs.

Archon elected to make dividend in kind payments for the first six dividend payments. Beginning with the seventh dividend payment, dividends accrued at a rate of 8% per annum per share of the sum of (i) $2.14 plus (ii) accrued but unpaid dividends. On the tenth Dividend Payment Date the Dividend Rate increased to 11% per annum per share and increased 0.50% per annum per share every Dividend Payment Date until the Dividend Rate reached a rate per annum per share of 16%. The table below summarizes the calculations determining each Dividend Payment amount, the total amount of accrued but unpaid dividends, and the Liquidation Preference.[2]

**Table 1. Dividend Calculations**

| Dividend Payment Date | Dividend Rate | Accrued but Unpaid Dividends | Dividend Rate multiplied by ($2.14 plus Accrued but Unpaid Dividends) |
|---|---|---|---|
| March 31, 1997 | 0.08 | 0 | 0.0856 |
| September 30, 1997 | 0.08 | 0.0856 | 0.0890 |
| March 31, 1998 | 0.08 | 0.1746 | 0.0926 |
| September 30, 1998 | 0.08 | 0.2672 | 0.0963 |
| March 31, 1999 | 0.11 | 0.3635 | 0.1377 |
| September 30, 1999 | 0.115 | 0.5012 | 0.1519 |
| March 31, 2000 | 0.12 | 0.6531 | 0.1676 |
| September 30, 2000 | 0.125 | 0.8206 | 0.1850 |
| March 31, 2001 | 0.13 | 1.0057 | 0.2045 |
| September 30, 2001 | 0.135 | 1.2102 | 0.2261 |
| March 31, 2002 | 0.14 | 1.4363 | 0.2503 |

---

[2] The August 31, 2007 Dividend calculation was prorated in accordance with section 2(a) of the Certificate, which states, "the amount of any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period." (Mot. for Summ. J., Ex. 1.)

7

| | | | |
|---|---|---|---|
| September 30, 2002 | 0.145 | 1.6866 | 0.2774 |
| March 31, 2003 | 0.15 | 1.9641 | 0.3078 |
| September 30, 2003 | 0.155 | 2.2719 | 0.3419 |
| March 31, 2004 | 0.16 | 2.6138 | 0.3803 |
| September 30, 2004 | 0.16 | 2.9941 | 0.4107 |
| March 31, 2005 | 0.16 | 3.4048 | 0.4436 |
| September 30, 2005 | 0.16 | 3.8484 | 0.4791 |
| March 31, 2006 | 0.16 | 4.3275 | 0.5174 |
| September 30, 2006 | 0.16 | 4.8449 | 0.5588 |
| March 31, 2007 | 0.16 | 5.4037 | 0.6035 |
| August 31, 2007 | 0.16 | 6.0071 | 0.5431 |
| Total Accrued but Unpaid Dividends on August 31, 2007 | | | $6.55 |
| Liquidation Preference = $2.14 + $6.55 = $8.69 | | | |

The total amount of accrued but unpaid dividends from the relevant period was $6.55. The Liquidation Preference is calculated by finding the sum of (i) $2.14, plus (ii) an amount equal to all accrued but unpaid dividends, yielding a Liquidation Preference of $8.69.

Archon redeemed all EPS at the price of $5.241 per share on August 31, 2007. The difference between the correct Liquidation Preference and the amount paid by Archon is $3.449 per share. As of August 31, 2007, (the date of Archon's redemption), Plaintiffs collectively held 2,099,311 shares of EPS, giving rise to damages of $7,240,523.64.

**C. Prejudgment Interest**

In diversity actions, the award of prejudgment interest is governed by state law. In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002). In Nevada, "[t]hree items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the

8

rate of interest must be applied." Kerala Props., Inc. v. Familian, 137 P.3d 1146, 1149 (Nev. 2006) (quotation omitted). In regards to the rate of interest, Nevada Revised Statutes § 99.040(1) provides:

> [w]hen there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due . . . .

Here, the Certificate does not expressly provide the rate of interest, and therefore § 99.040(1) determines the rate of interest. The table below summarizes the rates of interest[3] from the relevant periods as well as the number of shares purchased in those periods.

**Table 2. Interest Rate Calculations**

| Period | Prime Interest Rate | Prime Interest Rate plus two percent | Number of Shares Purchased |
| --- | --- | --- | --- |
| July 1, 2004 to December 31, 2004 | 4.25% | 6.25% | 391,058 |
| January 1, 2005 to June 30, 2005 | 5.25% | 6.25% | 297,487 |
| July 1, 2005 to December 31, 2005 | 6.25% | 8.25% | 199,641 |
| January 1, 2006 to June 30, 2006 | 7.25% | 9.25% | 794,103 |
| July 1, 2006 to December 31, 2006 | 8.25% | 10.25% | 151,126 |
| January 1, 2007 to June 30, 2007 | 8.25% | 10.25% | 53,700 |
| July 1, 2007 to December 31, 2007 | 8.25% | 10.25% | 212,201 |

Interest commences to run from August 31, 2007, the date Archon breached the certificate by redeeming the EPS shares for the incorrect amount. The amount of money to which the relevant rates must be applied is determined by multiplying the

---

[3] This Court takes judicial notice of the prime interest rate as ascertained by the Commissioner of Financial Institutions. Fed. R. Evid. 201 (Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

9

difference between the amount of the correct Liquidation Preference and what Archon paid ($8.69 - $5.241 = $3.449) by the number of shares from the relevant interest period. The table below summarizes the relevant interest rates, number of shares purchased during these periods, and the amount of money to which the relevant rates must be applied.

**Table 3. Amount of Damages to Apply Interest to.**

| Period | Prime Interest Rate plus two percent | Number of Shares | Damages |
|---|---|---|---|
| July 1, 2004 to December 31, 2004 | 6.25% | 391,058 | $1,348,741.78 |
| January 1, 2005 to June 30, 2005 | 7.25% | 297,487 | $1,026,032.66 |
| July 1, 2005 to December 31, 2005 | 8.25% | 199,641 | $688,561.81 |
| January 1, 2006 to June 30, 2006 | 9.25% | 794,103 | $2,738,861.25 |
| July 1, 2006 to December 31, 2006 | 10.25% | 151,126 | $521,233.57 |
| January 1, 2007 to June 30, 2007 | 10.25% | 53,700 | $185,211.20 |
| July 1, 2007 to December 30, 2007 | 10.25% | 212,201 | $731,881.25 |

For the 391,058 EPS shares purchased in the period of July 1, 2004 to December 31, 2004, interest of 6.25% per annum will be calculated from August 31, 2007 on $1,348,7441.78. For the 297,487 EPS share purchased in the period of January 1, 2005 to June 30, 2005, interest of 7.25% per annum will be calculated from August 31, 2007 on $1,026,032.66. For the 199,641 EPS shares purchased in the period of July 1, 2005 to December 31, 2005, interest of 8.25% per annum will be calculated from August 31, 2007 on $688,561.81. For the 794,103 EPS shares purchased in the period of January 1, 2006 to June 30, 2006, interest of 9.25% per annum will be calculated from August 31, 2007 on $2,738,861.25. For the 417,027 EPS shares purchased in the period from July 1, 2006 to August 31, 2007, interest of 10.25% per annum will be calculated from August 31, 2007 on $1,438,326.12.

### IV.  CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment,

Entry of Final Judgment, and to Strike (Doc. #126) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Supplement to Opposition to Plaintiffs' Second Motion for Summary Judgment and Entry of Final Judgment (Doc. #130) is hereby GRANTED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff and against Defendant in the amount of $7,240,523.64 for damages, $2,275,055.86 for pre-Judgment interest, for a total Judgment of $9,515,579.50.

DATED: December 22, 2010.

_____
PHILIP M. PRO
United States District Judge